[Cite as *State v. Buckner*, 2018-Ohio-233.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | Hon. John W. Wise, J.<br>Hon. Craig R. Baldwin, J. |
| -vs- | Case No. 2016 CA 101 |
| LINDA BUCKNER | |
| Defendant-Appellant | O P I N I O N |

CHARACTER OF PROCEEDING:    Criminal Appeal from the Court of Common
                            Pleas, Case No.  2016 CR 0479

JUDGMENT:                   Affirmed

DATE OF JUDGMENT ENTRY:     January 23, 2018

APPEARANCES:

For Plaintiff-Appellee              For Defendant-Appellant

GARY BISHOP                         RANDALL E. FRY
PROSECUTING ATTORNEY                10 West Newlon Place
JOSEPH C. SNYDER                    Mansfield, Ohio  44902
ASSISTANT PROSECUTOR
38 South Park Street
Mansfield, Ohio  44902

*Wise, J.*

{¶1} Defendant-Appellant Linda Buckner appeals her conviction, in the Court of Common Pleas, Richland County, for aggravated murder, murder, and other felony counts. Appellee is the State of Ohio. The relevant facts leading to this appeal are as follows.

{¶2} In the summer of 2015, appellant and her boyfriend, Walter Renz, were the next-door neighbors of Patsy Hudson, who lived alone at 284 Spring Street in Mansfield, Ohio. Hudson, then in her early sixties and on disability, was known to rescue and take care of a large number of cats in or around her house. Her adult son, Lonnie Clevenger, drove trucks for a living, but he periodically stopped at the house to visit. According to Lonnie, Hudson sometimes demonstrated reclusive behaviors, refusing to answer the door or the telephone if she was busy watching television or was simply having a bad day.

{¶3} Appellant and Renz became acquainted with Hudson, and occasionally drove her on local errands.

{¶4} On June 25, 2015, appellant, using the alias "Cara Longtail," went to the emergency room in Shelby, complaining of pain. Tr. at 400. She was prescribed Flexeril and Atenolol at that time by Dr. Charles Marti, who was on duty in the E.R. Tr. at 408. Dr. Marti later testified he wrote appellant the prescription for Atenolol because appellant told hospital personnel she been prescribed that medication, but she did not have any left. Tr. at 409. Both Dr. Marti and a second physician testifying for the State opined that a high enough dose of Atenolol could be fatal. Tr. at 416, 634-636.

**{¶5}** At about this time, appellant was speaking to neighbors about taking Hudson on a trip to Florida, although at one point she also stated that she was angry about Renz spending time at Hudson's house. One of the neighbors, Walter Liggett, specifically recalled that appellant and Renz, in late June 2015, "[s]aid they was [*sic*] going to head back down south and take Patsy [Hudson] with them to her sister in Florida." Tr. at 352.

**{¶6}** Appellant and Renz also told this neighbor that they were helping Hudson get rid of her cats. Despite this claim, Hudson was worried someone was trying to poison her cats, and told her son, Lonnie Clevenger, about this concern when he visited her in early July 2015. At one point, Hudson also informed police of the situation. Also, she continued to take some of the cats in for veterinarian appointments in early July. One appointment was scheduled for July 22, 2015, but Hudson did not show up at the veterinarian clinic.

**{¶7}** Shortly before July 4, 2015, another neighbor, Mark Clever, overheard an outdoor "yelling and screaming" argument involving the appellant, Renz and Hudson. Within a couple of weeks, he began to notice Hudson's mail piling up.

**{¶8}** Nicholas Miller, owner of a local lawn service, was contacted by Hudson in early July 2015. Hudson told him that "her neighbors" had been helping her with yard work, but she was concerned that they had "poisoned her cat or something," so she didn't want them taking further care of her lawn. Tr. at 398. On July 10, 2015, Miller mowed Hudson's grass and received payment for his work. This was the last day Hudson was seen alive in the neighborhood.

{¶9} On July 10, 2015, Karissa Gibson, a resident of Shelby, Ohio, was on her lunch break when she drove past an older-model blue van, similar to one owned by Renz, pulled over on the side of a country road. She noticed a "creepy looking" man in the process of dumping something. Tr. at 279, 292, 300. The next day, she went by again and found a number of cats in the area where the van had been sitting. Tr. at 287. Some of them had collars. Tr. at 289. She returned to that spot and eventually, with the help of a neighbor, took in over twenty cats found in the general location. Tr. at 290. Unfortunately, a couple of days later, a heavy rain flooded the spot, which is near a creek. *Id.*

{¶10} Sometime between late July and early August 2015, appellant and Renz vacated and abandoned the premises at 290 Spring Street, where they had been living. When the landlord, Dwight Wallen, went through the property, he found a ring washer in the basement that was not there when he first rented the house to them. A ring washer was later found to be missing from Hudson's house. Investigators also found a seven-day pill container, with six days' worth of various medications, in Hudson's house. Tr. at 487.[1]

{¶11} On August 3, 2015, another neighbor, Steve Au, called the police after noticing Hudson's mail accumulating, her grass being quite overgrown, and the cats having "vanished." Tr. at 332. When Hudson's son, Lonnie, next went to see her in August 2015, there was no one home. Tr. at 178. However, both of Hudson's vehicles were still at the house. Tr. at 178. He attempted to call the number he had for his mother, but

---

[1]    Because the actual occurrence of the disappearance and death of Hudson is not presently in dispute, we will not herein attempt to fully summarize additional trial testimony concerning the police investigation into Hudson's residence.

another female voice answered. Tr. at 182.   Lonnie later observed that his mother's jewelry boxes and two guns were missing from her house.   Tr. at 201.

{¶12} Between July 2015 and January 2016, Hudson's debit card was used in various locations throughout the United States. Tr. at 453-459. It was used in Ohio, Indiana, Missouri, Nebraska, Montana, South Dakota, Virginia, West Virginia, North Carolina, Tennessee, and Mississippi. *Id.*

{¶13} On December 22, 2015, officers from the Mansfield Police Department commenced a missing person investigation. The officers learned, among other things, that appellant and Renz had been using appellant's debit and credit cards. Upon questioning by detectives, Renz finally led police to various locations where parts of Hudson's dismembered body had been hidden.

{¶14} Investigators also found a nightgown, with numerous bloodstains, in the Spring Street residence where appellant and Renz had been living at the time of Hudson's disappearance. Tr. at 506. Two of the stains were matched to appellant; a third stain also contained appellant's blood, along with an unknown human contributor, described as a "minor DNA profile."  Tr. at 833.

{¶15} In addition, as further discussed *infra*, appellant later made admissions about her involvement in an Ohio killing to a woman she met in Mississippi.

{¶16}  On July 1, 2016, appellant was indicted by the Richland County Grand Jury as follows:

{¶17} Count I, aggravated murder (R.C. 2903.01(A)), an unclassified felony; Count II, murder (R.C. 2903.02(A)), an unclassified felony; Count III, abuse of a corpse (R.C. 2927.01(B)), a felony of the fifth degree; Count IV, tampering with evidence (R.C.

2921.12(A)(1)), a felony of the third degree; Count V, receiving stolen property (R.C. 2913.51(A)), a felony of the fifth degree; Count VI, misuse of credit card (R.C. 2913.21(B)(2)(D)(4), a felony of the fifth degree; Count VII: identity fraud, R.C. 2913.49(B), a felony of the fourth degree.

{¶18} The case proceeded to a jury trial commencing on November 17, 2016.[2] The State's case centered on the theory that appellant, either on her own or along with Renz, had caused Hudson to overdose on Atenolol, after which the couple secreted Hudson's dismembered body and made use of her money and credit cards.  Following the presentation of evidence, the jury was given, *inter alia,* instructions on aiding and abetting.

{¶19} Appellant was ultimately found guilty by the jury on all counts. At sentencing, the trial court found Count I and Count II to be allied offenses, and likewise found Count V and Count VI to be allied offenses. On Count I, appellant was sentenced to life in prison, without parole. For Counts III and IV, appellant was sentenced to three years in prison on each count. For Counts V and VII, appellant was sentenced to six months on each count. Furthermore, Counts III, IV, V and VII were ordered to run consecutively to each other, but concurrently to Count I.

{¶20} On December 28, 2016, appellant filed a notice of appeal. She herein raises the following two Assignments of Error:

{¶21} "I.  THE EVIDENCE IN THIS CASE WAS INSUFFICIANT [SIC] AS A MATTER OF LAW TO SUPPORT A CONVICTION OF AGGRAVATED MURDER AND

---

[2]  The record before us indicates appellant and Renz were not tried jointly.  *See* Tr. at 167.

AS A RESULT, THE APPELLANT'S RIGHTS AS PROTECTED BY ARTICLE I SECTION 16 OF THE OHIO CONSTITUTION AND FIFTH AMENDMENT OF THE UNITED STATES CONSTITUTION WERE VIOLATED.

**{¶22}** "II.  THE EVIDENCE IN THIS CASE WAS INSUFFICIANT [SIC] AS A MATTER OF LAW TO SUPPORT A CONVICTION OF MURDER AND AS A RESULT, THE APPELLANT'S RIGHTS AS PROTECTED BY ARTICLE I SECTION 16 OF THE OHIO CONSTITUTION AND FIFTH AMENDMENT OF THE UNITED STATES CONSTITUTION WERE VIOLATED."

### *Appellate Standard of Review*

**{¶23}** In reviewing a claim of insufficient evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. It is well-established that the State bears the burden of establishing each and every element of a charged crime and must do so with proof beyond a reasonable doubt. *See In re L.R.*, 8th Dist. Cuyahoga No. 93356, 2010-Ohio-15, ¶ 11.

### I.

**{¶24}** In her First Assignment of Error, appellant contends her conviction for the aggravated murder of Patsy Hudson was not supported by sufficient evidence. We disagree.

**{¶25}** R.C. 2903.01(A) provides as follows: "No person shall purposely, and with prior calculation and design, cause the death of another or the unlawful termination of another's pregnancy."

### *Cause of Death*

**{¶26}** The record in the case *sub judice* reveals the coroner listed the "immediate cause of death" regarding Hudson as unknown, noting the state of Hudson's dismembered body parts. Tr. at 617, 619. The coroner nonetheless considered Hudson's manner of death a homicide because he could not rationalize any other manner of death. Tr. at 619. Appellant posits the State's theory of the case was that appellant, in July 2015, caused Hudson to take an overdose of Atenolol, resulting in her death, in order to steal her identity and use her debit and credit cards, and that after Hudson's death, appellant assisted Renz in dismembering and secreting Hudson's body. In response, the State concedes its theory "revolved around" poisoning by an Atenolol overdose, but it urges "any number of possibilities exist" for how Hudson died based upon the evidence at trial. Appellee's Brief at 13. For example, the State's forensic anthropologist testified there was evidence of possible stabbing with a sharp instrument in one of Hudson's recovered vertebrae. Tr. at 708.

**{¶27}** In a criminal prosecution, a plea of 'not guilty' requires the State to prove all material facts relating to the crime charged, including those facts relating to the *corpus delicti. State v. Nutter* (1970), 22 Ohio St.2d 116, 118, 258 N.E.2d 440. "The *corpus delicti,* meaning the body or substance of a crime, in a homicide prosecution involves two elements, *i.e.* the fact of death and the existence of the criminal agency of another as the cause of death." *State v. Avery*, 7th Dist. Mahoning No. 96 CA 33, 1999 WL 397913,

citing *State v. Manago* (1974), 38 Ohio St.2d 223, 226, 313 N.E.2d 10. The Ohio Revised Code states: "The cause of death and the manner and mode in which the death occurred, as delivered by the coroner and incorporated in the coroner's verdict and in the death certificate filed with the division of vital statistics, shall be the legally accepted manner and mode in which such death occurred, and the legally accepted cause of death, unless the court of common pleas of the county in which the death occurred, after a hearing, directs the coroner to change his decision as to such cause and manner and mode of death." R.C. 313.19. However, "expert medical evidence is not always required to establish whether a death occurred as the result of the criminal agency of another." *Avery*, citing *State v. Carter* (1992), 64 Ohio St.3d 218, 226, 594 N.E.2d 595. Additional circumstances surrounding the offense may give rise to further support that the death resulted from the criminal agency of another. *Id.*

{¶28} Accordingly, in light of the evidence set forth in our recitation of facts and discussed infra, we reject appellant's claim that insufficient evidence was provided as to Hudson's cause of death.

*Prior Calculation and Design*

{¶29} Appellant next focuses on the "prior calculation and design" element of Ohio's aggravated murder statute.

{¶30} We note in 1974, the General Assembly reclassified "first-degree murder" as "aggravated murder" and substituted, in lieu of the former element of "deliberate and premeditated malice," a requirement of "prior calculation and design." *See State v. Jenkins* (1976), 48 Ohio App.2d 99, 102, 355 N.E.2d 825. The General Assembly's apparent intention "was to require more than the few moments of deliberation permitted

in common law interpretations of the former murder statute, and to require a scheme designed to implement the calculated decision to kill." *State v. Cotton* (1978), 56 Ohio St.2d 8, 11, 381 N.E.2d 190. R.C. 2903.01(A) was amended in 1981, but it retained the term 'prior calculation and design' as a necessary element of aggravated murder. *State v. Taylor* (1997), 78 Ohio St.3d 15, 18, 676 N.E.2d 82. The Ohio Supreme Court has also stated that "it is not possible to formulate a bright-line test that emphatically distinguishes between the presence or absence of 'prior calculation and design' " and that "[i]nstead, each case turns on the particular facts and evidence presented at trial." *Taylor*, *supra*, at 20.

**{¶31}** In the present case, we find evidence of prior calculation and design was first presented via testimony that appellant and Renz told neighbors that they were going to take Hudson on a purported trip to Florida. *See* Tr. at 352. Based on this, the jury could have reasonably inferred that this was part of a plan to allay suspicion in the neighborhood when all three of them disappeared at about the same time. The jury could have also reasonably inferred that the assistance appellant and Renz provided in driving Hudson to the grocery store (Tr. at 352) was a means of becoming acquainted with Hudson's finances and obtaining the PIN for her debit card.

**{¶32}** Also, appellant and Renz told neighbors that they were going to get rid of Hudson's cats for her. Tr. at 352, 357. This would have been out of character for the victim, as she was known to care greatly for her animals and had even made a formal police report on July 4, 2015 when she became concerned that one of them had been killed and another one poisoned. Tr. at 266. The officer who responded to that call for assistance described Hudson as upset, as she often took in stray cats to protect them.

Tr. at 272. Even until the time of her disappearance, Hudson would take her cats in for veterinary care. Tr. at 339-340. As noted in our recitation of facts, a witness testified that she saw Renz pulled over in a van, appearing to be dumping something, and the witness later found a number of cats stranded in that area. In sum, the record does not show Hudson would have had any intention of "getting rid of" her adopted cats, and the jury could have determined beyond a reasonable doubt that this was part of a scheme to murder Hudson and divert attention from Hudson's house.

{¶33} Upon review, we are unpersuaded by appellant's claim that insufficient evidence was provided that she acted with prior calculation and design, either on her own or in complicity with Renz, in causing Hudson's death.

### Element of Purpose

{¶34} Ohio law recognizes that circumstantial evidence is sufficient to prove the essential elements in a criminal case. *State v. Willey,* 5th Dist. Guernsey No. 98 CA 6, 1999 WL 3962, citing *State v. Hopfer* (1996), 112 Ohio App.3d 521, 558, 679 N.E.2d 321. Specifically, the element of purpose may be proven by circumstantial evidence. *State v. Buck*, 9th Dist. Summit No. 27597, 2017-Ohio-273, 81 N.E.3d 895, ¶ 43, citing *State v. Shue,* 97 Ohio App.3d 459, 466, 646 N.E.2d 1156 (9th Dist.1994).

{¶35} However, appellant herein directs us to *State v. Sorgee* (1978), 54 Ohio St.2d 464, 8 O.O.3d 452, 377 N.E.2d 782, and submits that the State in the present case relied solely on circumstantial evidence to prove its charge of aggravated murder. In *Sorgee*, the Ohio Supreme Court held "[a]n appellate court will reverse a conviction based solely on circumstantial evidence where that evidence does not, as a matter of law, preclude all reasonable theories of innocence." *Sorgee, supra,* at syllabus.

**{¶36}** However, the Ohio Supreme Court "has drawn a distinction between cases where the state uses wholly circumstantial evidence to prove an element of an offense, and cases where the state has submitted some direct evidence as to each element of a crime." *Jenks*, *supra*, at 264. The rule of *Sorgee* is not utilized in the latter scenario. *Id.*[3]

**{¶37}** In the case *sub judice*, the State called Christina Cooper, who had lived near appellant in an RV park in Ackerman, Mississippi, after Hudson's disappearance. According to Cooper, appellant admitted that she and Renz had killed someone in Ohio. Tr. at 514. Cooper recalled appellant saying she "knew that [Renz] was chopping up the body." Tr. at 535. Appellant further admitted to assisting Renz, after he had cut up the body, in putting the parts in bags, and scattering them throughout the county. *Id.* Appellant also told Cooper that she and Renz "were living off of a dead woman's credit card." Tr. at 530. Cooper also recounted: "*** [Appellant] said that they had killed a lady in Mansfield, Ohio, and that it all started because their dog had killed her cat. I guess it just escalated from there. I don't know exactly how it happened. She never told me that. The end result was that they chopped her up and spread her body out." Tr. at 534.

**{¶38}** Under Ohio law, "[d]irect evidence is evidence based on personal observation, including confessions." *State v. Rister*, 6th Dist. Lucas No. L-09-1191, 2012-Ohio-516, ¶ 12, citing *State v. Nicely,* 39 Ohio St.3d 147, 529 N.E.2d 1236 (1988), paragraph one of the syllabus. Thus, a defendant's confession may be construed as direct evidence of his or her guilt. *See State v. Corson*, 4th Dist. Pickaway No. 15CA4, 2015-

---

[3] In addition, at least one appellate court has found the continued validity of *Sorgee* to be "questionable." *See In Re B.N.C.*, 2nd Dist. Montgomery No. 25615, 2013-Ohio-4071, ¶ 29.

Ohio-5332, ¶ 30, citing *State v. Watts,* 1st Dist. Hamilton No. C–810091, 1981 WL 10176, f.n.1.

**{¶39}** We therefore find the rule of *Sorgee* inapplicable, and we find the State sufficiently proved the element of "purpose" by direct and circumstantial evidence.

### *Aiding and Abetting*

**{¶40}** Appellant finally argues that there was no evidence that sufficiently shows she aided and abetted in the commission of the offense.

**{¶41}** Ohio's complicity statute, R.C. 2923.03(A)(2), reads in pertinent part as follows: "No person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense." Under R.C. 2923.03(F) of the complicity statute, "[w]hoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished *as if he were a principal offender.*" (Emphasis added).

**{¶42}** We have recognized that in order to support a conviction for complicity by aiding or abetting under R.C. 2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal, and such intent may be inferred from the circumstances surrounding the crime. *State v. Shrider,* 5th Dist. Licking No. 07 CA 111, 2008-Ohio-3648, 2008 WL 2840598, ¶ 41, citing *State v. Johnson* (2001), 93 Ohio St.3d 240, 754 N.E.2d 796, syllabus. Mere approval or acquiescence, without expressed concurrence or the doing of something to contribute to an unlawful act, is not aiding or abetting. *State v. Mullins* (1986), 34 Ohio App.3d 192,

200, 517 N.E.2d 945, citing *Columbus v. Russell* (1973), 39 Ohio App.2d 139, 140, 316 N.E.2d 897.

**{¶43}** The record in the case *sub judice*, as discussed *supra*, reveals evidence that appellant participated with Renz in telling Hudson's neighbors that they would all be going to Florida together. Appellant was also connected to the scheme to attempt disposal of Hudson's cats. Appellant also sought out medications which the jury may have concluded caused an overdose to the victim. Furthermore, appellant confessed to a neighbor in Mississippi that she and Renz had killed and dismembered a woman in Mansfield, Ohio.

**{¶44}** Upon review of the record and transcript in a light most favorable to the prosecution, we find that a reasonable finder of fact could have found appellant guilty beyond a reasonable doubt of aggravated murder, either as the primary actor or as an aider and abettor.

### *Conclusion*

**{¶45}** We thus hold appellant's conviction for the aggravated murder of Patsy Hudson was supported by the sufficiency of the evidence.

**{¶46}** Appellant's First Assignment of Error is therefore overruled

### II.

**{¶47}** In her Second Assignment of Error, appellant contends her conviction for the murder of Patsy Hudson was not supported by sufficient evidence. We disagree.

**{¶48}** R.C. 2903.02(A), the Ohio murder statute, provides: "No person shall purposely cause the death of another or the unlawful termination of another's pregnancy."

**{¶49}** The Ohio Supreme Court has succinctly concluded: "Murder (R.C. 2903.02) is a lesser included offense of aggravated murder (R.C. 2903.01[A]). *** The sole difference is that prior calculation and design is absent from murder. ***." *State v. Monroe*, 105 Ohio St.3d 384, 2005-Ohio-2282, 827 N.E.2d 285, ¶ 36.

**{¶50}** Accordingly, based on our previous conclusions herein, we find sufficient evidence was presented for reasonable fact finders to conclude beyond a reasonable doubt appellant was guilty of the murder of Patsy Hudson, either as the primary actor or as an aider and abettor. We thus hold said conviction was supported by the sufficiency of the evidence.

**{¶51}** Appellant's Second Assignment of Error is overruled.

**{¶52}** For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Richland County, Ohio, is hereby affirmed.

By: Wise, J.

Gwin, P. J., and

Baldwin, J., concur.

JWW/d 0104