[Cite as *State v. Kosto*, 2018-Ohio-1925.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES: |
| | Hon. John W. Wise, P. J. |
| Plaintiff-Appellee | Hon. William B. Hoffman, J. |
| | Hon. Earle E. Wise, Jr., J. |
| -vs- | |
| | Case No. 17 CA 54 |
| THOMAS KOSTO | |
| | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:    Criminal Appeal from the Court of Common
                            Pleas, Case No.  16 CR 649


JUDGMENT:                   Affirmed in Part; Reversed in Part and
                            Remanded


DATE OF JUDGMENT ENTRY:     May 14, 2018


APPEARANCES:

For Plaintiff-Appellee              For Defendant-Appellant

CLIFFORD J. MURPHY                  ROBERT E. CALESARIC
ASSISTANT PROSECUTOR                35 South Park Place
20 North Second Street, 4th Floor   Suite 150
Newark, Ohio  43055                 Newark, Ohio  43055

*Wise, John, P. J.*

{¶1} Defendant-Appellant Thomas Kosto appeals his conviction for involuntary manslaughter and other offenses in the Court of Common Pleas, Licking County. Plaintiff-Appellee is the State of Ohio. The relevant facts leading to this appeal are as follows.

{¶2} On May 29, 2015, Chad Baker, an adult male, was found unconscious in the bathroom of the house on South Williams Street in Newark that he shared with his fiancée, Katie O. A single syringe was in the bathroom, but a subsequent police search turned up no additional drug paraphernalia or illegal drugs. After discovering Chad, Katie called 911 and performed CPR. First responders found Chad's chest and abdomen were still warm to the touch. Paramedics attempted two doses of Narcan to revive Chad. However, he was thereafter pronounced dead at Licking Memorial Hospital.

{¶3} According to Chad's fiancée Katie, she and Chad had both been heroin users in the past, but both had been through rehabilitation programs and had been free of the drug for several years. Tr. at 130-133. Katie and Chad were both employed and had an eighteen-month-old child together. Katie later stated that any discovery by her of evidence of Chad's return to heroin use would have "meant trouble" in their relationship. Tr. at 141-142.

{¶4} Dr. Charles Jeffrey Lee, the chief forensic pathologist and deputy coroner for Licking County performed the autopsy on Chad's body, as further discussed *infra*. Among other things, his toxicology report showed Chad had heroin, cocaine, and "a little marijuana" in his system when he died. Tr. at 229. Dr. Lee listed Chad's manner of death as accidental. Tr. at 261.

{¶5} Law enforcement investigators recovered some of Chad's deleted cell phone texts. Some of these were messages between Appellant Kosto and Chad on the evening of May 28, 2015, including appellant texting the statement: "I'm doing a shot with you so hurry if you can. Lol." Appellant also texted: "Iv got a new rig for you too. If you like it I can get u more." Appellant admitted to Detective Todd Green that he had deleted some of his texts because it looked like he was the one that helped Chad get heroin. Tr. at 362, 383.

{¶6} Further investigation indicated that appellant had been in frequent contact with his dealer, Nicole Fannin, during the month of May 2015, and that appellant was the sole source of heroin to Chad in the forty-eight hours prior to his death. Nicole later testified that she was selling heroin to appellant on a daily basis, in quantities no less than one-half of a gram, throughout May 2015. Tr. at 297.

{¶7} On October 20, 2016, the Licking County Grand Jury indicted appellant on one count of involuntary manslaughter (R.C. 2903.04(A)/(C)), one count of corrupting another with drugs (R.C. 2925.02(A)(3)/(C)(1)(a)), one count of tampering with evidence (R.C. 2921.12 (A)(1)/(B)) and one count of heroin possession (R.C. 2925.11(A)/(C)(6)(a)).

{¶8} The case proceeded to a jury trial commencing on June 27, 2017.

{¶9} On June 29, 2017, appellant was found guilty of all four of the above counts.

{¶10} The trial court, upon merging Counts 1, 2, and 4, sentenced appellant to an aggregate prison term of 5 years.

{¶11} On July 19, 2017, appellant filed a notice of appeal. He herein raises the following three Assignments of Error:

**{¶12}** "I. TRIAL COURT ERRED IN NOT GRANTING DEFENDANT'S RULE 29 MOTION FOR ACQUITAL [SIC] AND IN NOT INSTRUCTING THE JURY IN ACCORDANCE WITH *BURRAGE V. UNITED STATES,* 571 U.S. ___ (2014).

**{¶13}** "II. THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT BY ALLOWING THE STATE TO PUT ON EXPERT TESTIMONY WITHOUT COMPLYING WITH CRIMINAL RULE 16 DENYING APPELLANT DUE PROCESS OF LAW.

**{¶14}** "III. THE JURY'S VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

I.

**{¶15}** In his First Assignment of Error, appellant contends the trial court erred in denying his motion for acquittal and in failing to properly provide jury instructions on the charge of involuntary manslaughter.[1]

*Motion for Acquittal: Involuntary Manslaughter*

**{¶16}** An appellate court reviews a denial of a Crim.R. 29 motion for acquittal using the same standard used to review a sufficiency of the evidence claim. *See State v. Larry*, 5th Dist. Holmes No. 15CA011, 2016-Ohio-829, ¶ 20, citing *State v. Carter* (1995), 72 Ohio St.3d 545, 553, 651 N.E.2d 965, 1995–Ohio–104. Thus, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond

---

[1] We are utilizing the assigned error set forth in the text of appellant's brief, which does not match the one placed in his table of contents.

a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

{¶17} Appellant herein was convicted of involuntary manslaughter (Count 1), which is set forth in R.C. 2903.04(A) as follows: "No person shall cause the death of another or the unlawful termination of another's pregnancy as a proximate result of the offender's committing or attempting to commit a felony."

{¶18}  The predicate offense in this instance (Count 2) was corrupting another with drugs under R.C. 2925.02(A)(3), which states as follows: "No person shall knowingly *** [b]y any means, administer or furnish to another or induce or cause another to use a controlled substance, and thereby cause serious physical harm to the other person, or cause the other person to become drug dependent."

{¶19}  Count 2 of the indictment includes the language "to wit: Heroin, a Schedule I controlled substance."

{¶20}  In support of his argument, appellant directs us to *Burrage v. United States,* ––– U.S. –––, 134 S.Ct. 881, 892, 187 L.Ed.2d 715 (2014), which involved a penalty enhancement provision under 21 U.S.C. Sec. 841(b)(1)(C). Said federal statute in essence imposes a 20–year mandatory minimum sentence on a defendant who unlawfully distributes a Schedule I or II drug, when "death or serious bodily injury results from the use of such substance."  The United States Supreme Court in *Burrage* granted certiorari on two questions, the first of which was whether the defendant could be convicted under the "death results" provision when the use of the controlled substance was a "contributing cause" of the death. *Id.* at 886. The Court first determined that the federal statute in question imposes a requirement of "but-for causation." *Id.* at 889-891.

Although the Government proposed the argument that an act or omission should be considered a cause-in-fact if it was a "substantial" or "contributing" factor in producing a given result, this was rejected by the Court. *Id.* at 890. The Court instead stated: "The language Congress enacted requires death to 'result from' use of the unlawfully distributed drug, not from a combination of factors to which drug use merely contributed." *Id.* at 891. The Court proceeded to hold that "*** at least where use of the drug distributed by the defendant is not an independently sufficient cause of the victim's death or serious bodily injury, a defendant cannot be liable under the penalty enhancement provision of 21 U.S.C. § 841(b)(1)(C) unless such use is a but-for cause of the death or injury." *Id.* at 892.

{¶21} In the case *sub judice*, the State of Ohio was required to prove under R.C. 2903.04(A) that appellant had caused the death of Chad Baker as a proximate result of his committing or attempting to commit the felony offense of corrupting another with drugs under R.C. 2925.02(A)(3). We note the indictment and the bill of particulars both allege that the cause of Chad Baker's death was based on the felony of corrupting another specifically with heroin. However, the record before us reveals that said theory is not fully consistent with Dr. Lee's investigation. He specifically testified that "acute combined drug effects" from "[u]sing heroin *and* cocaine" were the cause of Chad's death. Tr. at 243 (emphasis added). Dr. Lee also could not opine on cross-examination that Chad would have died from the heroin use in and of itself. In other words, there is arguably a reasonable probability that but for the use of cocaine, the death would not have occurred. Appellant was not charged with providing cocaine to Chad, nor did the State pursue a

theory that appellant did so. In particular, the jury heard the following testimony by Dr. Lee during his cross-examination:

Q. Okay. Let's go back and talk about that tycol - toxicology report. So, I was kind of processing your testimony the other day, and your theory is the combined effect of cocaine and heroin caused Mr. Baker's death. Correct?

A. That's correct.

Q. So, not just the heroin?

A. Correct.

Q. So, but for the use of the cocaine, do you know whether or not the heroin would have killed him?

A. No.

Q. Or, are we guessing?

A. It would be a guess. There's no way to tell for sure if he would have died of only heroin. There's no way to tell if he would have died only of cocaine. But, certainly, he died when they were both mixed together. That's the best that we can  - -

Q. I appreciate your honesty.

A.  - - get out of this.

**{¶22}** Tr. at 261.

**{¶23}** Thus, just as in *Burrage*, "[n]o expert was prepared to say that [the victim] would have died from the heroin use alone." *Id.* at 890

**{¶24}** We recognize that in *Burrage*, the United States Supreme Court was interpreting a penalty enhancement provision in a federal statute, not an Ohio criminal statute. However, this distinction does not dissuade us from applying the rationale of *Burrage* herein, and "*** we cannot amend statutes to provide what we consider a more logical result." *State v. Link,* 155 Ohio App.3d 585, 2003–Ohio–6798, 802 N.E.2d 680, ¶ 17, citing *State v. Virasayachack* (2000), 138 Ohio App.3d 570, 741 N.E.2d 943. Accordingly, upon review, we find insufficient evidence was presented for reasonable fact finders to conclude beyond a reasonable doubt that appellant was guilty of involuntary manslaughter as charged by the State.

### *Motion for Acquittal: Corrupting Another with Drugs*

**{¶25}** Appellant was also convicted of violating R.C. 2925.02(A)(3), which, as set forth earlier, states in pertinent part as follows: "No person shall knowingly *** [b]y any means, administer or furnish to another or induce or cause another to use a controlled substance, and thereby cause serious physical harm to the other person, or cause the other person to become drug dependent."

**{¶26}** Pursuant to R.C. 2901.01(A)(5), "serious physical harm to persons" means any of the following:

(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;

(b) Any physical harm that carries a substantial risk of death;

(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;

(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;

(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

**{¶27}** In the case *sub judice*, in addition to the aforementioned medical testimony, much of the focus at appellant's trial was on a reconstruction of the timeline of Chad Baker's death, evidence (particularly via text messages and the testimony of Nicole Fannin) concerning the provider of heroin to appellant and subsequently to Chad, and certain statements and actions by appellant after Chad died. The time frame of the usage of heroin and cocaine by Chad were reconstructed from autopsy and toxicology reports by Dr. Lee. The doctor also described in general terms what a heroin overdose typically does to a human body, eventually causing death "because you're not breathing as enough --- as you need to for your oxygen." Tr. at 241. The State further put on evidence that Chad had used heroin and cocaine between 7:00 PM and 11:00 PM on May 28, 2015, that he also used heroin between 2:00 AM and 4:00 PM on May 29, 2015, and that he used heroin again minutes before his death in the early morning hours of May 29, 2015. Evidence was also adduced that appellant provided Chad with a "rig," *i.e.*, a pre-loaded syringe that would help conceal Chad's relapse to heroin usage from his fiancée, Katie.

**{¶28}** However, our review of the record reveals a dearth of expert testimony on the connection of Chad's heroin use *per se* to the question of "serious physical harm" to him. While we herein refuse to naively understate the physical dangers of illegal heroin

use, it is well-established that the State bears the burden of establishing each and every element of a charged crime and must do so with proof beyond a reasonable doubt. *See, e.g.*, *State v. Buckner*, 5th Dist. Richland No. 2016 CA 101, 2018-Ohio-233, ¶ 23, citing *In re L.R.*, 8th Dist. Cuyahoga No. 93356, 2010-Ohio-15, ¶ 11. We note that during redirect examination, Dr. Lee was asked by the prosecutor if there was "any way to know whether Chad used weak heroin, strong heroin, or any combination?" He replied: "He used enough that it killed him --- that's all I can say." Tr. at 281. However, just moments before that, Dr. Lee had reiterated that the cause of death for Chad was a combination of cocaine *and* heroin. *See* Tr. at 278.

**{¶29}** We hereby hold that the "but-for causality" rationale of *Burrage* must also be applied to the element of "causing serious physical harm" to another under R.C. 2925.02(A)(3), and accordingly, upon review, we find insufficient evidence was presented in this instance for reasonable fact finders to conclude beyond a reasonable doubt that appellant was guilty of corrupting another with drugs, namely heroin, as charged by the State.

### *Jury Instruction Issue*

**{¶30}** Appellant's remaining argument essentially goes to the question of whether the lack of a *Burrage*-based jury instruction constituted reversible error. As the State notes in response, appellant never requested a jury instruction regarding any requirement that heroin would have to be found to be the sole cause of Chad Baker's death. An error not raised in the trial court must be plain error for an appellate court to reverse. *See State v. Long* (1978), 53 Ohio St.2d 91, 372 N.E.2d 804; Crim.R. 52(B). However, based on our

previous conclusions in the present assigned error, we find the jury instruction issue as presented to be moot. *See* App.R. 12(A)(1)(c).

**{¶31}** Appellant's First Assignment of Error is therefore sustained in part and found moot in part.

II.

**{¶32}** In his Second Assignment of Error, appellant contends the trial court erred to his prejudice by allowing the State to put on the expert testimony of Dr. Lee without fully complying with the written summary report requirements of Crim.R. 16(K).

**{¶33}** We find appellant's arguments would impact the counts of involuntary manslaughter and corrupting another with drugs only (*see* Assignment of Error I), not the remaining counts of tampering with evidence and heroin possession. Thus, based on our previous conclusions herein, we find the present assigned error is moot.

III.

**{¶34}** In his Third Assignment of Error, appellant contends his convictions for involuntary manslaughter and corrupting another with drugs were against the manifest weight of the evidence.

**{¶35}** Our standard of review on a manifest weight challenge to a criminal conviction is stated as follows: "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. *See also, State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541. The granting

of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175, 485 N.E.2d 717. Even though a manifest weight analysis may involve an appellate court's consideration of credibility (*see State v. Sanders*, 76 N.E.3d 468, 2016–Ohio–7204, ¶ 38 (5th Dist.)), the weight to be given to the evidence and the credibility of the witnesses are primarily issues for the trier of fact (*see, e.g., State v. Jamison* (1990), 49 Ohio St.3d 182, 552 N.E.2d 180).

**{¶36}** Under the present circumstances, we find the arguments in this assigned error are also moot.

**{¶37}** For the foregoing reasons, the judgment of the Court of Common Pleas, Licking County, Ohio, is hereby affirmed in part and reversed in part. Appellant's convictions under Counts 3 and 4 of the indictment are affirmed. Appellant's convictions under Counts 1 and 2 of the indictment are reversed, and the matter is remanded for re-sentencing.

By: Wise, P. J.

Wise, Earle, J., concurs.

Hoffman, J., concurs in part and dissents in part.

JWW/d 0420

*Hoffman, J., concurring in part and dissenting in part.*

{¶38} I concur in the majority's analysis and disposition of Appellant's first assignment of error as it relates to his conviction for involuntary manslaughter. However, I respectfully dissent from its disposition therein as it relates to his conviction for corrupting another with drugs.

{¶39} I find a clear distinction between the two charges. Because corrupting another with drugs, by definition, can be supported by evidence administering or furnishing heroin to another "carries a substantial **RISK** of death" (emphasis added) the *Burrage* "but for" rationale does not apply. I find the evidence noted in the majority opinion at paragraph 27 provides sufficient evidence to support Appellant's conviction.[2]

---

[2] I further concur in the majority's analysis and disposition of Appellant's second assignment of error.